## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Amber Knautz, individually and on behalf of all others similarly situated,

                              Plaintiff,

-v.-

Walmart Inc.,

                              Defendant.

Case No. 3:22-cv-50236

Hon. Iain D. Johnston

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE

**TABET DIVITO & ROTHSTEIN LLC**
Amanda N. Catalano
Daniel L. Stanner
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
Telephone: (312) 762-9450
acatalano@tdrlaw.com
dstanner@tdrlaw.com

**COVINGTON & BURLING LLP**
Steven J. Rosenbaum (*pro hac vice*)
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
srosenbaum@cov.com

Andrew Leff (*pro hac vice*)
620 Eighth Avenue
New York, N.Y. 10018
Telephone: (212) 841-1000
aleff@cov.com

*Attorneys for Defendant*
*Walmart Inc.*

Dated:  November 14, 2022

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
      MATTER JURISDICTION. ....................................................................................... 2

     A.    Legal Standard. ............................................................................................ 2

     B.    Plaintiff Suffered No Economic Harm and Therefore Lacks Standing to
         Sue.................................................................................................................. 3

II.    THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO
      STATE A CLAIM. ...................................................................................................... 5

     A.    Legal Standard. ............................................................................................ 5

     B.    Plaintiff Fails Plausibly to Allege a Violation of the ICFA. ................................... 5

         1.    Plaintiff Lacks a Viable Theory of Misrepresentation. .............................. 6

             a)    The Product's front label contains no misrepresentation. ............... 6

             b)    The Product label explicitly discloses that Walmart's
                  Product contains no dairy (beyond sodium caseinate)................. 10

         2.    Plaintiff's Consumer Protection Claims Also Fail Under Rule 9(b). ....... 12

     C.    Plaintiff Fails Adequately to Allege Her Negligent Misrepresentation
         Claim............................................................................................................. 12

     D.    Plaintiff's Fraud Claim Falls Short of Rule 9(b)'s Heightened Pleading
         Bar. ............................................................................................................... 13

     E.    Plaintiff Fails Plausibly to Allege Claims for Breach of Warranty Under
         State or Federal Law. .................................................................................. 13

         1.    Breach of Express Warranty. .................................................................. 13

         2.    Breach of Implied Warranty of Merchantability. ..................................... 14

         3.    Violation of the MMWA. ......................................................................... 15

     F.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed. ............................... 15

III.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF. ......................... 15

CONCLUSION.................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. Costco Wholesale Corp.*,
2022 WL 4585417 (S.D. Ill. Sept. 29, 2022) ..................................................13, 14

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) .......................................................................3, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................5

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) .......................................................................15

*Bakopoulos v. Mars Petcare US, Inc.*,
2021 WL 2915215 (N.D. Ill. July 12, 2021) ................................................5

*Ball v. Sony Elecs. Inc.*,
2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ..........................................12

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .......................................................................7

*Bell v. Publix Super Markets*,
982 F.3d 468 (7th Cir. 2020) .......................................................................11

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .........................................................................6

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) .......................................................................10

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) .........................................................................5

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .....................................................................4, 5

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) ..................................................9

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) ...........................................................................7

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) ...................................................................10

*Chiappetta v. Kellogg Sales Co.*,
  2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ..............................................12, 13, 14

*Coffee-Rich, Inc. v. Wisc. Dep't of Agric.*,
  70 Wis. 2d 265, 234 N.W.2d 270 (1975) ..............................................................8

*Collishaw v. Coop. Regions of Organic Producer Pools*,
  2022 WL 3290563 (S.D.N.Y. Aug. 11, 2022) .......................................................1

*Curtis v. 7-Eleven, Inc.*,
  2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ........................................................7

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ................................................................................13

*De Falco v. Vibram USA, Inc.*,
  2013 WL 1122825 (N.D. Ill. Mar. 18, 2013)..........................................................4

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ...............................................................................12

*Douglas v. Vill. of Palatine*,
  2020 WL 1469439 (N.D. Ill. Mar. 26, 2020)..........................................................8

*Eike v. Allergan, Inc.*,
  850 F.3d 315 (7th Cir. 2017) .................................................................................3

*English v. Danone N. Am. Pub. Benefit Corp.*,
  22-cv-5105 (S.D.N.Y. filed June 17, 2022)............................................................1

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
  2021 WL 6049964 (N.D. Ill. Dec. 21, 2021) .......................................................15

*Floyd v. Pepperidge Farm, Inc.*,
  2022 WL 203071 (S.D. Ill. 2022) .......................................................................6, 9

*Geffner v. Coca-Cola Co.*,
  928 F.3d 198 (2d Cir. 2019)...................................................................................7

*Gociman v. Loyola Univ. of Chi.*,
  41 F.4th 873 (7th Cir. 2022) ................................................................................15

*Griffin v. Medtronic, Inc.*,
  2017 WL 4417821 (N.D. Ill. Oct. 5, 2017)...........................................................14

*Groshek v. Time Warner Cable, Inc.*,
   865 F.3d 884 (7th Cir. 2017) ......................................................................5

*Hasek v. DaimlerChrysler Corp.*,
   319 Ill. App. 3d 780, 745 N.E.2d 627 (2001) ........................................14

*Hauger v. Dollar Gen. Corp.*,
   2022 WL 2532487 (C.D. Ill. July 7, 2022) ....................................10, 13

*Housey v. Proctor & Gamble Co.*,
   2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *appeal pending,* No. 22-888 (2nd
   Cir.) ............................................................................................................5

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) ...........................................................7

*In re Johnson & Johnson Talcum Powder Prods. Mktg.*,
   903 F.3d 278 (3d Cir. 2018)........................................................................3

*Karlinski v. Costco Wholesale Corp.*,
   2022 WL 2867383 (N.D. Ill. July 21, 2022)........................................8, 15

*Lemke v. Kraft Heinz Food Co.*,
   2022 WL 1442922 (W.D. Wis. May 6, 2022) .........................................11

*Manley v. Hain Celestial Grp.*,
   417 F. Supp. 3d 1114 (N.D. Ill. 2019) ....................................................13

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   935 F.3d 573 (7th Cir. 2019) ......................................................................3

*Martin v. Wholesome Dairy, Inc.*,
   437 S.W.2d 586 (Tex. 1969)......................................................................8

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69, 435 N.E.2d 443 (1982) ................................................12, 13

*Reinitz v. Kellogg Sales Co.*,
   2022 WL 1813891 (C.D. Ill. June 2, 2022) .......................................10, 12

*Renne v. Geary*,
   501 U.S. 312 (1991).....................................................................................3

*Robinson v. Walgreen Co.*,
   2022 WL 204360 (N.D. Ill. Jan. 24, 2022) ...............................................7

*Scherr v. Marriott Int'l, Inc.*,
   703 F.3d 1069 (7th Cir. 2013) ..................................................................15

*Schilke v. Wachovia Mortgage, FSB*,
   820 F. Supp. 2d 825 (N.D. Ill. 2011) .................................................................15

*Schimmer v. Jaguar Cars, Inc.*,
   384 F.3d 402 (7th Cir. 2004) .............................................................................15

*Sklyar v. Energizer Brands, LLC*,
   2022 WL 4539573 (E.D.N.Y. Sept. 28, 2022) .....................................................7

*Slep-Tone Entm't Corp. v. Kalamata, Inc.*,
   75 F. Supp. 3d 898 (N.D. Ill. 2014) .....................................................................8

*Spector v. Mondelez Int'l, Inc.*,
   178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................6

*Sumner v. The Kroger Co.*,
   22-cv-1950 (S.D. Ill. filed Aug. 21, 2022) ..........................................................1

*Tiffin v. Great Atl. & Pac. Tea Co.*,
   18 Ill. 2d 48, 162 N.E.2d 406 (1959) .................................................................14

*Toulon v. Cont'l Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) .............................................................................10

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .........................................................................................3

*Wach v. Prairie Farms Dairy, Inc.*,
   2022 WL 1591715 (N.D. Ill. May 19, 2022) ........................................................1

*Weaver v. Champion Petfoods U.S. Inc.*,
   3 F.4th 927 (7th Cir. 2021) ...............................................................................11

*Willard v. Tropicana Mfg. Co.*,
   577 F. Supp. 3d 814 (N.D. Ill. 2021) .................................................................11

*Zahora v. Orgain LLC*,
   2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) .........................................................1

**Statutes and Other Authorities**

21 C.F.R. § 117.5(g)(3)(viii).................................................................................10

*Cream*, Merriam-Webster Dictionary,
   https://www.merriam-webster.com/dictionary/cream .........................................9

*Creamer*, Britannica Dictionary, https://www.britannica.com/dictionary/creamer.......................6

*Creamer*, Collins Dictionary,
 https://www.collinsdictionary.com/us/dictionary/english/creamer ............................................6

*Creamer*, Dictionary.com, https://www.dictionary.com/browse/creamer.....................................6

*Creamer* Google Dictionary, https://tinyurl.com/bd784ee9 .........................................................6

*Creamer*, Merriam-Webster Dictionary,
 https://www.merriam-webster.com/dictionary/creamer ........................................................6, 9

*Creamer*, Oxford English Dictionary,
 https://www.oed.com/view/Entry/44029 .................................................................................8

Fed. R. Civ. P. 9(b) .................................................................................................5, 12, 13

Fed. R. Civ. P. 12(b)(1).....................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 5

Ill. Comp. Stat. Ann. 5/2–607 ..........................................................................................14

Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) ............................ *passim*

U.S. Food and Drug Administration, *Fruits, Veggies and Juices - Food Safety for
 Moms to Be*, https://www.fda.gov/food/people-risk-foodborne-illness/fruits-
 veggies-and-juices-food-safety-moms-be .........................................................................10

U.S. Food and Drug Administration, *What You Need to Know About Egg Safety*,
 https://www.fda.gov/food/buy-store-serve-safe-food/what-you-need-know-
 about-egg-safety.............................................................................................................10

Defendant Walmart Inc. ("Walmart"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves to dismiss Plaintiff's Complaint, ECF 1, with prejudice. In support of its motion, Walmart states as follows:

## PRELIMINARY STATEMENT

Plaintiffs' firm Sheehan & Associates, P.C. has flooded federal courts with hundreds of class action lawsuits alleging that product labels purportedly mislead consumers. *See* Declaration of Andrew Leff, dated November 14, 2022 ("Leff Decl.") , attached as **Exhibit 1**, at Ex. A (listing more than 90 food and beverage labeling class action lawsuits in Illinois federal courts since 2021, plus hundreds more in California and New York federal courts back to 2017). His most prolific venture, filing over 120 lawsuits claiming that the defendant sells a product labeled as "vanilla" flavored but containing limited "real" vanilla or "artificial" flavoring, has been overwhelmingly rejected, with dozens of federal courts dismissing the lawsuits at the pleadings stage.[1]

Mr. Sheehan has now shifted his sights in this and other lawsuits to another baseless theory: alleging that consumers are somehow misled as to the absence of certain dairy ingredients in products labeled "coffee creamer," despite "coffee creamers" being defined by every leading dictionary—*including every dictionary cited by Plaintiff herself*—as a non-dairy product, and despite coffee creamers having been made for decades without such dairy ingredients. *See English v. Danone N. Am. Pub. Benefit Corp.*, 22-cv-5105 (S.D.N.Y. filed June 17, 2022); *Sumner v. The Kroger Co.*, 22-cv-1950 (S.D. Ill. filed Aug. 21, 2022).

---

[1] *Collishaw v. Coop. Regions of Organic Producer Pools*, 2022 WL 3290563, at *3 n.3 (S.D.N.Y. Aug. 11, 2022) (discussing "SDNY Vanilla Cases," noting sixteen prior dismissals in that District alone, and dismissing); *see also, e.g.*, *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) (dismissing substantively identical vanilla suit brought by Plaintiff's counsel); *Zahora v. Orgain LLC*, 2021 WL 5140504, at *1 (N.D. Ill. Nov. 4, 2021) (same).

Walmart markets and sells under its "Great Value" brand a chocolate caramel coffee creamer (the "Product") that Plaintiff allegedly purchased, featuring the phrase "coffee creamer" on the front, and on the back an FDA-compliant ingredient list that discloses accurately all ingredients in the Product, including the first three listed in order of predominance: "SUGAR, WATER, SUNFLOWER OIL." Leff Decl. at Ex. B ("Compl.") ¶¶ 17, 22, 61. The label nowhere represents that the Product contains dairy (other than the unchallenged statement that it contains "sodium caseinate (a milk derivative)." *Id.* ¶¶ 17, 22.

Plaintiff strives to contrive misrepresentation out of these undisputedly accurate label statements. She alleges, without support, that consumers understand the term "coffee creamer" to refer to a dairy product. Compl. ¶¶ 17, 22–29. But this contention flies in the face of decades of dairy-free products labeled "coffee creamer." The most prominent coffee creamers on the market today are, like Walmart's Product, made with water and vegetable oil, rather than milk. Indeed, so well established is this usage that the consistent dictionary definition of "coffee creamer" is a *non-dairy* coffee additive.

Plaintiff likewise complains that the label discloses that the Product is "Ultra Pasteurized." Compl. ¶ 17. But she does not dispute the accuracy of this representation. And, as copious federal regulations and guidances make clear, pasteurization is not limited to "milk-based beverages," *Id.* ¶ 21, but routinely performed on nondairy beverages and other products.

Each of Plaintiff's claims fails at the pleading stage and should be dismissed with prejudice. Indeed, as shown below, Plaintiff lacks standing even to pursue her claims.

## I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

### A.  Legal Standard.

"Article III standing is [an issue] of jurisdictional significance;" without it, "the court ha[s]

no authority to resolve the case." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). Federal courts must "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks and citation omitted). "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). In the context of a consumer purchase, harm is "more than a desert mirage," and "buyer's remorse" does not suffice. *In re Johnson & Johnson Talcum Powder Prods. Mktg.*, 903 F.3d 278, 280–81, 288 (3d Cir. 2018); *see also Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) ("The fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment.").

Where, as here, a defendant lodges a fact-based standing challenge, the district court may "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Once a defendant proffers evidence suggesting the absence of subject matter jurisdiction, "[t]he presumption of correctness that we accord to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists[.]" *Id.*

### B.    Plaintiff Suffered No Economic Harm and Therefore Lacks Standing to Sue.

Plaintiff claims injury under the theory that Walmart sold the Product "at higher prices" because they purportedly mislead consumers into believing it contains dairy ingredients. Compl. ¶ 33. But incontrovertible facts demonstrate that, assuming Plaintiff did buy the Product as she alleges, she actually paid a *discounted price* for the Product as compared to Walmart's Great Value dairy-based equivalent coffee additive.

3

Plaintiff avers that she bought the Walmart non-dairy chocolate caramel coffee creamer in March or April 2022 at the Walmart store in Freeport, Illinois ("Store 1740"). Compl. ¶ 61. Between February 26, 2022 and May 6, 2022, Walmart sold that Product at Store 1740 for either $2.16 or $2.48 per unit, depending on the date of purchase. Declaration of Pallavi Rajbhandari ("Rajbhandari Decl."), attached as **Exhibit 2**, at ¶ 5. During this time period, Walmart never sold the Product at Store 1740 for more than $2.48 per unit. *See id*; *see also* Compl. ¶ 61.

At the same store and during the same period, Walmart sold the same sized dairy-based counterpart of the Product for $3.68. Rajbhandari Decl. ¶ 6 (discussing Great Value sweet cream dairy coffee creamer). Thus, far from paying a price premium for the Product as a result of a purported misapprehension that it was dairy-based, purchasers of the Product *received a price discount* of at least $1.20 as compared to the price for the Product's dairy-based counterpart. *See id*. Purchasers clearly suffered no injury by paying a lower price for the Product.

These uncontroverted facts vitiate any possibility that Plaintiff suffered economic harm, and so deprive her of standing. A plaintiff must "provide [some] evidence that he paid more than the actual value of the merchandise he received." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014). Thus, "under the ICFA [Illinois Consumer Fraud and Deceptive Business Practices Act] … plaintiffs may sue for the difference between the product's value if the misrepresentations had been true and the product's true value." *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *7 n.8 (N.D. Ill. Mar. 18, 2013).

Given that the "value" of a dairy-based Walmart coffee additive, as shown by its actual price, far exceeds the price of the Product, a purchaser of the Product clearly suffered no cognizable injury. Such a purchaser has not been misled into paying a higher price based on her purported misapprehension that the Product contained dairy, given that the price that she would have paid

4

for such a dairy-containing product is materially higher than the price she actually paid. Thus, under the facts as alleged by Plaintiff, she lacks standing to pursue her claims. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 889 (7th Cir. 2017) ("Because [plaintiff] has failed to demonstrate that he suffered a concrete injury, he lacks Article III standing."); *cf. Housey v. Proctor & Gamble Co.*, 2022 WL 874731, at * 8–9 (S.D.N.Y. Mar. 24, 2022) (dismissing claims given the absence of a price premium having been paid), *appeal pending,* No. 22-888 (2nd Cir.).[2]

## II. THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Legal Standard.

Under Fed. R. Civ. P. 12(b)(6), "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (cleaned up). Furthermore, pursuant to Fed. R. Civ. P. 9(b), Plaintiff's ICFA and fraud claims must be pled with particularity. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (fraud); *Camasta*, 761 F.3d at 736–37 (ICFA).

### B. Plaintiff Fails Plausibly to Allege a Violation of the ICFA.

"To succeed in a private cause of action under [the ICFA], a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."

---

[2] In light of the Rajbhandari declaration evidence, the Court should not accept Plaintiff's allegation (Compl. ¶ 35) that she paid $3.68 for the Product. *See Sears*, 572 F.3d at 444. Indeed, if Plaintiff did pay $3.68, it was because she did not buy the Product at all, but rather, likely the Product's dairy-containing counterpart. Rajbhandari Decl. ¶ 6. And if she did not buy the Product at all, she for that independent reason lacks standing to assert her claims. *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products.").

*Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 664 (N.D. Ill. 2016) (quotation omitted). Plaintiff's claim falls at the first hurdle.

### 1.    Plaintiff Lacks a Viable Theory of Misrepresentation.

Illinois courts "apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citation omitted). This standard requires "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Floyd v. Pepperidge Farm, Inc.*, 2022 WL 203071, at *3 (S.D. Ill. 2022).

### a)    The Product's front label contains no misrepresentation.

Plaintiff's claims rest entirely on the allegation that Walmart somehow misled her by labeling the Product a "creamer" even though it does not contain dairy. But that is exactly what the Product is: Every single one of the dictionaries cited by Plaintiff herself (Compl. ¶¶ 3–7) define a "creamer" as a nondairy product. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/creamer (last visited Nov. 7, 2022) (defining "creamer" as "a nondairy product used as a substitute for cream (as in coffee)"); Dictionary.com, https://www.dictionary.com/browse/creamer (last visited Nov. 7, 2022) (defining "creamer" as "a nondairy product in powder or liquid form, made chiefly from corn syrup solids and used as a substitute for cream, especially for coffee cream"); Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/creamer (last visited Nov. 7, 2022) (defining "creamer" as "a nondairy substance that is used in place of cream, as in coffee"); The Britannica Dictionary, https://www.britannica.com/dictionary/creamer (last visited Nov. 7, 2022) (defining "creamer" as "a liquid or powder that is used instead of cream in coffee or tea"); *Creamer* Google Dictionary, https://tinyurl.com/bd784ee9 (last visited Nov. 7, 2022) (defining "creamer"

as "a cream or milk substitute for adding to coffee or tea."). Reasonable consumers understand the phrase "coffee creamer" to refer to a non-dairy coffee additive, consistent with its definition.

Courts routinely reject as untenable false labeling claims predicated upon a purported meaning of a word or phrase that conflicts directly with the dictionary definition. *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (using Merriam-Webster definition of "steak" to determine how reasonable consumers would understand that term, and dismissing plaintiffs' consumer protection claim); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (affirming dismissal of false labeling claim because plaintiff's proposed interpretation of "diet" conflicts with dictionary definitions of same); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 201 (2d Cir. 2019) (affirming dismissal of consumer protection claims because Merriam-Webster's definition of "diet" shows that defendant's use of same on label is "accurate and lawful"); *Sklyar v. Energizer Brands, LLC*, 2022 WL 4539573, at *3 (E.D.N.Y. Sept. 28, 2022) (granting motion to dismiss false labeling claim because plaintiff's proposed interpretation of "basic" conflicts with dictionary definitions of same and so "lacks the requisite plausibility"); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *12, *16 (N.D. Ill. Sept. 13, 2022) (granting motion to dismiss based on dictionary definitions of "recyclable" that contradict plaintiff's purported consumer understanding of same); *Robinson v. Walgreen Co.*, 2022 WL 204360, at *7 (N.D. Ill. Jan. 24, 2022) (granting motion to dismiss because dictionary definition of term "infant" shows that defendant's use of same on label "is not misleading"); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758-59 (N.D. Ill. 2015) (dismissing ICFA claim because plaintiff's proposed interpretation of "refine" conflicts with Merriam-Webster's definition of same).

This consumer understanding of the term "coffee creamer" as a non-dairy product (unless specifically labeled otherwise) is long-standing; indeed, it goes back to the very invention of the

term "coffee creamer." According to the Oxford English Dictionary, "coffee creamer" took on its core meaning—a "*substitute* for milk or cream, typically made from sweetened vegetable oils and fats"—as early as 1961. *Creamer*, Oxford English Dictionary, https://www.oed.com/view/Entry/44029 (last visited Nov. 7, 2022) (emphasis added). Food manufacturers at that time had begun selling nondairy coffee additives labeled as coffee "creamer." *E.g.*, Leff Decl. at Ex. C (U.S. Patent and Trademark Office Filings showing Coffee Rich coffee "creamer" sales beginning in 1961; ingredients listed as "Water, Vegetable Fats, Corn Syrup Solids," others); Leff Decl. at Ex. D (U.S. Patent and Trademark Office Filings showing Coffee-Mate "coffee creamer" sales beginning in 1961; ingredients listed as "Corn Syrup Solids, vegetable fat," others).[3] And shortly thereafter, more than 50 years ago, courts recognized that "coffee creamer" typically connotes a non-dairy product, with one explaining that "[m]ost coffee cream sold today is a "product [in which] butter fa[t] is replaced by a vegetable oil." *Martin v. Wholesome Dairy, Inc.*, 437 S.W.2d 586, 600 (Tex. 1969). Another court explained:

> Coffee-Rich['s coffee creamer] differs from cream in that it consists of vegetable-derived ingredients, rather than of animal fats. . . . Compared to cream and cream derivatives, Coffee-Rich enjoys advantages in terms of resistance to spoilage, price, storability, and less tendency to 'feather' or 'oil off' in coffee and tea.

*Coffee-Rich, Inc. v. Wisc. Dep't of Agric.*, 70 Wis. 2d 265, 268, 234 N.W.2d 270, 271 (1975).

Because Plaintiff's allegation that "[c]onsumers are misled [by the Product label] to expect the presence of cream, from dairy ingredients" (Compl. ¶ 29) is "contradicted by judicially-noticed facts from the public record," the court need "not accept [it] as true." *Douglas v. Vill. of Palatine*, 2020 WL 1469439, at *3 (N.D. Ill. Mar. 26, 2020); *see also Karlinski v. Costco Wholesale Corp.*,

---

[3] The Court may judicially notice trademark applications and related filings. *See Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014).

8

2022 WL 2867383, at *4 (N.D. Ill. July 21, 2022) ("Whether Defendant's label could 'plausibly deceive a reasonable consumer' depends on what chocolate means to a reasonable consumer, not what it means to Plaintiff.") (dismissing ICFA claim brought by Plaintiff's counsel).

While some (but not all, *see* p. 1 *supra*) manufacturers may employ a "belts and suspenders" approach and add label language indicating their coffee creamers are non-dairy, *see* Compl. ¶¶ 15–16, the absence of such a statement cannot render the Product label confusing given the dictionary definition of "creamer" as a non-dairy product, and its longstanding use to describe non-dairy products. Plaintiff's complaint sets forth no basis to conclude that "a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled" by the Product label. *Floyd*, 2022 WL 203071, at *3.

Plaintiff's references to FDA regulations are similarly unavailing. *See* Compl. ¶¶ 8, 9, 25. She alleges that the "name 'coffee creamer' is almost identical to 'coffee cream,' defined by the FDA as a dairy product." *Id.* ¶ 25. But calling "coffee cream" and "coffee creamer" identical does not make them so—particularly given their indisputably different definitions. *Compare, e.g.*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cream (last visited Nov. 7, 2022) (defining "cream" as "the yellowish part of milk containing from 18 to about 40 percent butterfat") (quoted Compl. ¶ 4), *with* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/creamer (last visited Nov. 7, 2022) (defining "creamer" as "a nondairy product used as a substitute for cream (as in coffee)"). In any event, Plaintiff does not even allege that consumers are aware of this technical FDA definition. *See Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *4 (N.D. Ill. Apr. 8, 2022) ("[A]verage consumers are not likely to be aware of the nuances of the FDA's regulations of a particular food.") (dismissing ICFA claim brought by Plaintiff's counsel).

The Product's unchallenged label statement that it is "Ultra Pasteurized" changes nothing. Compl. ¶ 17. Pasteurization has long been a common practice for dairy and non-dairy products alike, including such wide-ranging products as fruit juice, honey and eggs.[4] The Product's front label statements are thus "completely true" and cannot support an ICFA claim. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (affirming dismissal of ICFA claim).

> **b)** **The Product label explicitly discloses that Walmart's Product contains no dairy (beyond sodium caseinate).**

Plaintiff's claims also fail because the Product label unambiguously states that the Product contains water and sunflower oil, rather than milk. As admitted in paragraph 22 of the Complaint, the label's ingredient panel lists as ingredients not milk or cream, but "WATER" and "SUNFLOWER OIL." This is fatal to her claims. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) (For an ICFA claim, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020) ("where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list").

Unambiguous disclaimers on the back or side of packaging can serve to confirm the meaning of front label representations. *See Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487, at *4 (C.D. Ill. July 7, 2022) (dismissing because "a consumer could read the ingredient list to learn what other ingredients are contained within the crackers if they were so concerned with the amount of graham flour or honey in the product, as Plaintiff contends"); *Reinitz v. Kellogg Sales Co.*, 2022

---

[4] *See* U.S. Food and Drug Administration, *Fruits, Veggies and Juices - Food Safety for Moms to Be*, https://www.fda.gov/food/people-risk-foodborne-illness/fruits-veggies-and-juices-food-safety-moms-be (last updated Sept. 27, 2018); 21 C.F.R. § 117.5(g)(3)(viii) (regulating "Honey (pasteurized)"); FDA, *What You Need to Know About Egg Safety*, https://www.fda.gov/food/buy-store-serve-safe-food/what-you-need-know-about-egg-safety (last updated May 10, 2022).

WL 1813891 (C.D. Ill. June 2, 2022) (dismissing because "fudge" front label did not necessarily convey that product contained milk, and ingredients statement accurately revealed that it did not).

*Bell v. Publix Super Markets* is not to the contrary. 982 F.3d 468 (7th Cir. 2020). *Bell* rejected the so-called "ambiguity rule," which it described as providing that "a front label cannot be deceptive if there is any way to read it that accurately aligned with the back label." *Id.* at 476. Because the "100% Grated Parmesan" label on the defendant's product could be interpreted in several plausible ways, one of which was misleading, the court declined to dismiss. *Id.* at 476–77.

Here, by contrast, the word "creamer" has a well-established meaning: a nondairy product used as a substitute for cream (as in coffee). *See supra* at pp. 6–8. Thus, given "the absence of an affirmative misrepresentation on the front label, [Plaintiff] and the general public are not free to ignore the ingredient list." *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 831 (N.D. Ill. 2021). *Bell* is also limited to "100%"-type claims. *Weaver v. Champion Petfoods U.S. Inc.*, 3 F.4th 927, 936–38 (7th Cir. 2021) ("Unlike in *Bell*, [defendant]'s packaging did not represent that it was made with 100% fresh regional ingredients.") (dismissing claims because challenged statements would not be "misleading to a reasonable consumer"); *Lemke v. Kraft Heinz Food Co*., 2022 WL 1442922, at * 3 (W.D. Wis. May 6, 2022) *(*granting motion to dismiss because while *Bell* involved a "100% Grated Parmesan" front label "conveying that the product only contains [Parmesan] cheese," this front product label "represent[ed] no more than 'mozzarella cheese,'" which was "further defined in the ingredients list"; "the remainder of the front packaging contains no other statement that belies the ingredients list on the back of the product").[5] Walmart's

---

[5] *Bell* is also inapposite because those plaintiffs alleged that they had conducted consumer surveys showing consumer confusion. 982 F.3d at 480. Here, as in *Weaver*, 3 F.4th at 938, and *Lemke*, 2022 WL 1442922, at *3, Plaintiff alleges nothing of the sort.

Product's only claim is that it contains ultra-pasteurized coffee creamer. Because Plaintiff does not plausibly allege that the Product contains anything else, her Complaint should be dismissed.[6]

### 2. Plaintiff's Consumer Protection Claims Also Fail Under Rule 9(b).

Rule 9(b) requires Plaintiff plead the "who, what, when, where, and how" of the alleged misrepresentation. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). But her Complaint lacks any allegation as to "when" she purportedly saw the label statements about which she complains. *See Ball v. Sony Elecs. Inc.*, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005) (dismissing because "there are no allegations that plaintiffs heard or relied on any of the unidentified statements in making their purchases").

### C. Plaintiff Fails Adequately to Allege Her Negligent Misrepresentation Claim.

As discussed *supra* in Section II.B.1., Plaintiff does not plausibly allege any incorrect information on the Product label. Her negligent misrepresentation claim thus necessarily fails.

Plaintiff's negligent misrepresentation claim also fails because she fails to plead the basis for any "duty" owed by Walmart. Such a duty exists only where the defendant is a "learned intermediary (like an accountant) offering professional advice to its customers[.]" *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *7–8 (N.D. Ill. Mar. 1, 2022) (dismissing negligent misrepresentation claim brought by Plaintiff's counsel); *Reinitz*, 2022 WL 1813891, at *6 ("producer of breakfast products" is not "learned intermediar[y] who may be liable in tort") (same).

Plaintiff's claim is also barred because "[t]he remedy for economic loss, loss relating to a purchaser's disappointed expectations[,] . . . lies in contract." *Moorman Mfg. Co. v. Nat'l Tank*

---

[6] Plaintiff alleges that "members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent." Compl. ¶ 83. And Plaintiff alleges that those states' consumer protection statutes are "similar to the" IFCA. *Id.* ¶ 82. Accordingly, because "Plaintiff has failed to sufficiently plead a colorable ICFA claim," she likewise fails to plead "the same as to any claims alleged under the [other states'] statutes." *Reinitz*, 2022 WL 1813891, at *5.

*Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 450 (1982); *Manley v. Hain Celestial Grp.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019). Plaintiff fits just this description: she purports to be dissatisfied with Walmart's coffee creamer and wants money for her loss. *See* Compl. at p. 15.[7]

### D. Plaintiff's Fraud Claim Falls Short of Rule 9(b)'s Heightened Pleading Bar.

Although Plaintiff must allege that Walmart "intentionally made a false statement of material fact . . . for the purpose of inducing reliance thereon," *Hauger*, 2022 WL 2532487, at *6, such averment cannot be "conclusory." *Chiappetta*, 2022 WL 602505, at *8. Plaintiff alleges only that Walmart's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations," Compl. ¶ 113, a formulation Illinois courts have repeatedly found conclusory and therefore insufficient under Rule 9(b). *E.g.*, *Chiappetta*, 2022 WL 602505, at *8 (plaintiff failed to plead scienter where sole allegation is that defendant "had fraudulent intent because it misrepresented the characteristics of the Product on the Product's packaging").

Finally, because by reviewing the back label of the Product Plaintiff "ha[d] ample opportunity to ascertain the truth of the representations before" purchasing, "the reliance element of [her] common law fraud claim cannot be met as a matter of law." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 882–83 (7th Cir. 2005) (quotations and citation omitted).

### E. Plaintiff Fails Plausibly to Allege Claims for Breach of Warranty Under State or Federal Law.

#### 1. Breach of Express Warranty.

Where a product label consumer protection claim fails, *see supra*, an express warranty claim fails alongside it. *See Akers v. Costco Wholesale Corp.*, 2022 WL 4585417, at *5 (S.D. Ill.

---

[7] *Moorman*'s exceptions are inapplicable given that Plaintiff neither seeks relief for "*personal injury or property damage*," *Manley*, 417 F. Supp. 3d at 1120 (emphasis in original)), nor alleges that Walmart "is in the business of supplying information for the guidance of others in their business transactions." *Moorman*, 91 Ill. 2d at 88–89, 435 N.E.2d at 452.

Sept. 29, 2022). Furthermore, product descriptions on labels are not warranties "of any kind." *Id.* at *5 (phrase "'black raspberry flavor' combined with red coloring and a picture of black raspberries" not an express warranty to begin with).

Moreover, a buyer alleging breach of an express warranty must provide the defendant with timely notice of the alleged breach *before* bringing suit. *See* 810 Ill. Comp. Stat. Ann. 5/2–607; *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 793, 745 N.E.2d 627, 638 (2001) (requiring pre-suit "demand upon the defendant to perform under the terms of the warranty"). While Plaintiff alleges vaguely that she "provided or will provide notice" to Walmart, Compl. ¶ 96, she fails to indicate when these purported complaints were submitted, by whom, to whom, and containing what information. And, even taking as true Plaintiff's allegation that Walmart "received notice . . . due to complaints by . . . regulators, competitors, and consumers, to its main offices," *id*. ¶ 98, such complaints *by others* do not "relieve [Plaintiff] of her duty to notify" Walmart. *Chiappetta*, 2022 WL 602505, at *6. So too her attempt (Compl. ¶ 97) to "satisfy the pre-suit notice obligation by filing suit." *Id.*

### 2. Breach of Implied Warranty of Merchantability.

"[A] plaintiff must plead, among other things, that the goods sold were not merchantable at the time of sale (i.e., unfit for the ordinary purposes for which such goods are used)." *Griffin v. Medtronic, Inc.*, 2017 WL 4417821, at *5 (N.D. Ill. Oct. 5, 2017) (citing 810 ILCS 5/2-314(2)(c)). A food need only be "fit for human consumption." *Akers*, 2022 WL 4585417, at *5–6 (no breach because "[t]he [beverage] was clearly fit for consumption"). Plaintiff does not allege that the Product was unfit for human consumption, so her claim should be dismissed. *See Tiffin v. Great Atl. & Pac. Tea Co.*, 18 Ill. 2d 48, 56, 162 N.E.2d 406 (1959). Moreover, Plaintiff's implied warranty claim, like her express warranty claim, required, but lacks, pre-suit notice. *See Chiappetta*, 2022 WL 602505, at *6.

14

### 3. Violation of the MMWA.

The MMWA allows a consumer to recover damages under existing state law. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (MMWA "allows consumers to … borrow[] state law causes of action"). Because "the Plaintiff's breach of warranty claims fail, h[er] MMWA claim fails as well." *Karlinski*, 2022 WL 2867383, at *8.

### F. Plaintiff's Unjust Enrichment Claim Should Be Dismissed.

Where, as here, a consumer protection claim fails for lack of deception, an unjust enrichment claim fails too. *See Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Moreover, as "an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022). Plaintiff does not allege that she lacks an adequate remedy at law. *See* Compl. ¶ 114.

## III. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.

Because Plaintiff fails to state a valid claim, her claim for injunctive relief should be dismissed as moot. *E.g.*, *Schilke v. Wachovia Mortgage, FSB*, 820 F. Supp. 2d 825, 839 n.5 (N.D. Ill. 2011). Moreover, Plaintiff cannot "allege a 'real and immediate' threat of future violations of [her] rights," *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). Like any plaintiff bringing consumer protection claims, Plaintiff is necessarily "aware of [the defendant's] sales practices," and so "is not likely to be harmed by the practices in the future." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 2021 WL 6049964, at *3 (N.D. Ill. Dec. 21, 2021) (Johnston, J.) (citing *Camasta*, 761 F.3d at 740–41). She therefore lacks standing for injunctive relief. *See id.*

## CONCLUSION

For the foregoing reasons, Walmart respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and award such other further relief as the Court deems fair and just.

15

Dated:  November 14, 2022

Respectfully submitted,

By: s/ *Amanda N. Catalano*

**TABET DIVITO & ROTHSTEIN LLC**
Amanda N. Catalano
Daniel L. Stanner
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
Telephone: (312) 762-9450
acatalano@tdrlaw.com
dstanner@tdrlaw.com

**COVINGTON & BURLING LLP**
Steven J. Rosenbaum (*pro hac vice*)
850 Tenth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
srosenbaum@cov.com

Andrew Leff (*pro hac vice*)
620 Eighth Avenue
New York, N.Y. 10018
Telephone: (212) 841-1000
aleff@cov.com

*Attorneys for Defendant*
*Walmart Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that on November 14, 2022, I caused the foregoing DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE to be filed with the Clerk for the United States District Court for the Northern District of Illinois using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

<em>s/ Amanda N. Catalano</em>